**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Sandra A Kanady,

        Plaintiff,

v.

Commissioner of Social Security Administration,

        Defendant.

No. CV-22-08054-PCT-DJH

**ORDER**

Plaintiff challenges the denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff exhausted administrative remedies and filed a Complaint seeking judicial review of the denials. (Doc. 1.) The Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed Plaintiff's Opening Brief (Doc. 12, "Pl. Br."), Defendant's Amended Answering Brief (Doc. 16, "Def. Br."), Plaintiff's Reply (Doc. 19, "Reply"), and the Administrative Record (Doc. 10, "AR."), the Court hereby reverses the Commissioner's unfavorable decision and remands for additional proceedings.

## I.     THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW

To determine whether a claimant is disabled for purposes of the Act, the Administrative Law Judge ("ALJ") follows a five-step process. *E.g.*, 20 C.F.R. §

404.1520(a)(4).[1] The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in disqualifying work, she is not disabled. *Id*. If she is not engaged in such work, the analysis proceeds to step two, where the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If the claimant has no such impairment, she is not disabled. *Id*. If she does, the analysis proceeds to step three, where the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four,[2] where the ALJ determines whether the claimant is still capable of performing her past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id*. If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. *Id*. § 404.1520(a)(4)(v). If the claimant cannot perform any other work, she is disabled. *Id*.

The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted). In determining whether substantial evidence supports a decision, the court "must consider

---

[1] Federal regulations applicable to the DIB program's disability determinations are codified in 20 C.F.R. part 404, subpart P. Parallel regulations governing the SSI program are codified in 20 C.F.R. part 416, subpart I. These regulations are substantively identical as applied here. Therefore, the Court will cite only to DIB regulations for simplicity and clarity.

[2] The "residual functional capacity is the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quotations and citations omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## II.  PROCEDURAL HISTORY

Plaintiff filed applications for benefits in March 2019 alleging disability beginning in December 2018. (AR. at 233-42.) She alleged disability resulting from severe, continuous pain in her low back, legs, and feet. (AR. at 288.) The Social Security Administration ("SSA") denied the claims at the initial and reconsideration phases of administrative review (AR. at 139-44, 149-66), and Plaintiff timely requested a hearing before an ALJ. (AR. at 167-68.) ALJ Christina Mein conducted a telephonic hearing on December 14, 2020. (AR. at 45-67.) At that hearing, the Plaintiff and a vocational expert ("VE") testified. Of note, the VE testified that a hypothetical individual capable of light work with various postural and environmental limitations could perform Plaintiff's past relevant work as a cashier, housekeeper, or appointment clerk. (AR. at 64.) Responding to questions from Plaintiff's counsel, the VE testified an individual using "a medically necessary assistive device for ambulation and for standing" could perform appointment clerk jobs and "some" cashiering jobs with a sit-stand option. (AR. at 66.)

The ALJ issued an unfavorable decision dated March 17, 2021. (AR. at 14-22.) She concluded Plaintiff had not engaged in disqualifying substantial, gainful work activity, and that she suffered from lumbar degenerative disc disease. (AR. at 16-18.) The ALJ concluded that Plaintiff's impairments did not meet or medically equal the criteria of any listed impairment, and that Plaintiff retained the ability to perform "light work as defined in 20 CFR 404.1567(b)," including the ability to lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours; frequently balance, stoop, kneel, and crouch; and occasionally crawl or climb. (AR. at 18.) She found Plaintiff "cannot work around unprotected heights or hazardous unshielded moving machinery." (AR. at 18.) The ALJ

1  concluded Plaintiff could perform her past relevant work as a cashier or housekeeper at

2  step four, and thus, was not disabled. (AR. at 21-22.)

3  **III.    DISCUSSION**

4      Plaintiff raises four issues: (1) whether the ALJ erred by concluding Plaintiff's

5  wheeled walker was not medically necessary; (2) whether the ALJ erred by failing to

6  address Plaintiff's mononeuropathy at step two; (3) whether the ALJ erred by failing to

7  comply with regulations governing medical opinion evidence; and (4) whether the ALJ

8  erred by improperly rejecting Plaintiff's symptom testimony. (Pl. Br. at 1.) The Court finds

9  the ALJ committed harmful error by concluding Plaintiff's wheeled walker was not

10  medically necessary and remands for further consideration of RFC and Plaintiff's ability

11  to perform past relevant work or other work. Since the Court finds reversible error on this

12  issue and that further proceedings are necessary, it need not address the remaining issues.

13  **A.    Substantial evidence does not support the ALJ's conclusion Plaintiff's wheeled**
14  **walker was not prescribed**

15      The ALJ must evaluate RFC "based on all the relevant evidence in [the] case

16  record." 20 C.F.R. § 404.1545(a)(1). Any hypothetical question posed to the VE, "which

17  derives from the RFC, must set out all the limitations and restrictions of the particular

18  claimant[,]" and "an RFC that fails to take into account a claimant's limitations is

19  defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)

20  (quotations and citations omitted). At step four, the RFC will be used to determine whether

21  the claimant could perform her past relevant work as she performed it or as it is generally

22  performed in the national economy. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001);

23  20 C.F.R. § 404.1560(b)(2). A VE "may offer expert opinion testimony in response to a

24  hypothetical question about whether a person with the physical and mental limitations

25  imposed by the claimant's medical impairment(s) can meet the demands of the claimant's

26  previous work, either as the claimant actually performed it or as generally performed in the

27  national economy." 20 C.F.R. § 404.1560(b)(2). The issue before the Court is whether the

28  ALJ committed harmful error by omitting a walker from Plaintiff's RFC.

    **1.    The medical evidence**

In June 2019, Plaintiff's treating family nurse practitioner, Claudia Converse ("FNP Converse"), prescribed Plaintiff a "[w]alker with brakes and [a] seat to assist [her] in ambulating[,]" noting that "[s]he has unsteady gait and numbness in both legs[.]" (AR. at 443.) A separate treatment record from FNP Converse corresponding to that date shows Plaintiff presented for "back pain with numbness," which she described as "chronic and intense [for six] months[,]" and aggravated by "movement, [including] prolonged sitting[,] standing, [or] walking[.]" (AR. at 484.) Upon examination, Plaintiff exhibited full strength, motor function, and range of motion, but decreased sensation in her calves and a positive straight-leg raising examination from a seated position. (AR. at 486.) FNP Converse noted Plaintiff's condition was "worsening." (AR. at 486.) She ordered the walker and x-rays of Plaintiff's spine and referred Plaintiff to the Summit Center. (AR. at 486.)

In late September 2019, Plaintiff presented for a consultative examination with Dr. Robert Gordon. (AR. at 514-21.) Dr. Gordon noted Plaintiff had "been using a wheeled walker for the last month, which is reportedly prescribed by her primary care practitioner." (AR. at 514.) Upon examination, Dr. Gordon noted Plaintiff's "apparent difficulties" standing and walking independently to the exam table due to her pain; her inability to stoop due to complaints of pain; her inability to lift each foot off the ground independently and "apparent difficulties in balance when observed ambulating independently to, from and about the examination room[]"; her inability to tandem walk or walk on heels and toes; and her "slow, shuffling and purposeful appearing gait." (AR. at 516.) Dr. Gordon wrote that Plaintiff's walker was "medically necessary based on a reported history of lumbar spine, knee[,] and foot pain." (AR. at 516.) Although he concluded Plaintiff could stand or walk for six-to-eight working hours, Dr. Gordon reiterated Plaintiff's walker was medically necessary, and that it was used for balance on all terrains. (AR. at 519-20.)

In September 2020, approximately one year later, FNP Converse completed yet another requisition slip for a walker with a seat and brakes. (AR. at 529.) She noted Plaintiff experiences "severe back pain and [an] unsteady gait." (AR. at 529.) In an assessment form completed that month, FNP Converse noted Plaintiff must use a cane or other assistive

1  device. (AR. at 1038.)

2  **2.      The ALJ decision**

3        Despite this evidence, the ALJ dismissed Plaintiff's need for a walker in the

4  unfavorable decision, noting that while Plaintiff presented with it for treatment in

5  September 2019, "there is no indication that this was medically necessary or prescribed by

6  FNP Converse[.]" (AR. at 19.) Later, the ALJ indicated Dr. Gordon's findings were

7  persuasive "other than the walker requirement[,]" as there was "no evidence" Plaintiff was

8  prescribed a walker, and Dr. Gordon "merely noted a slow and shuffling gait." (AR. at 21.)

9  **3.      The parties' arguments**

10        Plaintiff argues the ALJ never propounded a "complete hypothetical" to the VE

11  because she omitted Plaintiff's need for a walker. (Pl. Br. at 17-18.) Plaintiff also notes that

12  the requirements of her light RFC, including frequently balancing, stooping, and kneeling,

13  "would obviously be limited with the use of a medically necessary walker." (Pl. Br. at 18

14  n. 17.) Plaintiff argues that, considering her need for the walker, the conclusion she can

15  stand or walk for six of eight working hours is not adequately supported and that, with a

16  limitation to sedentary exertion, the Medical-Vocational rules direct a finding she is

17  disabled. (Pl. Br. at 18.)

18        Defendant cites Social Security Ruling ("SSR") 96-9p for the proposition an

19  ambulatory assistive device is medically required only when documentation establishes the

20  need for it *and* describes the circumstances for which it is needed. (Def. Br. at 4.)[3]

21  Defendant notes that the requisition form here merely indicates the walker was to assist

22

23  ───────────────

24  [3] Social Security Rulings, or SSRs, "are binding on all components of the Social Security
   Administration and represent precedent final opinions and orders and statements of policy
   and interpretations of the [Act]." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224

25  (9th Cir. 2009) (internal quotations and citations omitted). They "do not carry the 'force of
   law,' but they are binding on ALJs nonetheless. . . and are entitled to some deference as

26  long as they are consistent with the [Act] and regulations." *Diedrich v. Berryhill*, 874 F.3d
   634, 638 (9th Cir. 2017) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1113 n.5 (9th Cir.

27  2012)). SSR 96-9p provides, in part, that "[t]o find that a hand-held assistive device is
   medically required, there must be medical documentation establishing the need for a hand-
   held assistive device to aid in walking or standing, *and* describing the circumstances for

28  which it is needed (i.e., whether all the time, periodically, or only in certain situations;
   distance and terrain; and any other relevant information)." 1996 WL 374185, at *7 (S.S.A.
   July 2, 1996) (emphasis added).

Plaintiff with ambulation, without describing the specific circumstances for which it would be needed. (Def. Br. at 4.) Assuming this documentation was sufficient, however, Defendant notes the ALJ properly concluded the walker was not medically necessary by relying upon benign examination findings from the record. (Def. Br. at 4-5.) Defendant argues Dr. Gordon merely relied upon Plaintiff's reported need for the walker, and that the ALJ cited Dr. Gordon's own normal examination findings to support her conclusion the walker was unnecessary. (Def. Br. at 5.) Finally, Defendant argues any error by the ALJ is harmless because the VE testified, based on her knowledge and experience, that Plaintiff could still perform her past relevant work as a cashier if she needed a walker to ambulate. (Def. Br. at 6.)

**4.    Analysis**

The ALJ's assertion there is "no indication" or "no evidence" that Plaintiff was prescribed a walker, or that one was medically necessary, is plainly incorrect. FNP Converse prescribed the walker in June 2019 and again in September 2020 (AR. at 443, 529), and Dr. Gordon documented its use and agreed it was medically necessary based on Plaintiff's report it was prescribed. (AR. at 516, 519-20.) Not only does this evidence establish Plaintiff's need, but Dr. Gordon also indicated Plaintiff required it for balance and pain, and on all terrains, in accordance with the requirements of SSR 96-9p. (AR. at 519-20.) To the extent Dr. Gordon was only relying upon Plaintiff's reported need for it, it would appear her need is established in the record. (AR. at 443, 486, 529.) Consequently, Dr. Gordon appropriately relied upon Plaintiff's subjective report.

Regarding Defendant's argument the ALJ rejected the need for a walker based upon benign clinical examinations, including Dr. Gordon's, the ALJ did not employ this rationale with respect to the overall record, and with respect to Dr. Gordon, the ALJ omitted key observations and findings. The ALJ scarcely mentions Plaintiff's need for a walker in the decision. First, in her general discussion of the evidence, the ALJ noted that Plaintiff presented for a medical appointment using a walker in September 2019, "but there is no indication that this was medically necessary or prescribed by FNP Converse[.]" (AR. at 19,

1    citations omitted). The ALJ referenced the neurological consultative examination from

2    April 2019, where Plaintiff presented without an assistive device, but with "variable

3    ataxia." (AR. at 20.)[4] The ALJ again referenced the walker in her discussion of Dr.

4    Gordon's report. (AR. at 21.) There, she found that Dr. Gordon's RFC, except for the

5    walker, was supported by the larger evidentiary record. (AR. at 21.) The ALJ then

6    explained, "While the claimant told Dr. Gordon that she was prescribed a walker, there is

7    no evidence of this in the treatment records, as discussed above. Dr. Gordon merely noted

8    a slow and shuffling gait." (AR. at 21.) That was the ALJ's express rationale for rejecting

9    Plaintiff's need for a walker.

10         The ALJ's conclusion Plaintiff does not require a walker was premised on the ALJ's

11   erroneous finding that one had not been prescribed. (AR. at 21.) The only other evidence

12   the ALJ clearly cited to support her conclusion a walker was unnecessary was that "Dr.

13   Gordon merely noted a slow and shuffling gait[,]" (AR. at 21), but this is not completely

14   accurate. He also observed Plaintiff's "apparent difficulties" standing and walking

15   independently; her inability to stoop; and her "apparent difficulties in balance when

16   observed ambulating independently to, from and about the examination room[.]" (AR. at

17   516.) The ALJ omitted key observations from Dr. Gordon's report, and her analysis is not

18   supported. *Garrison v. Colvin*, 759 F.3d 995, 1017 n. 23 (9th Cir. 2014) ("The ALJ was

19   not permitted to 'cherry-pick' from [ ]mixed results to support a denial of benefits[.]")

20   (quotations omitted); *Lannon v. Comm'r of Soc. Sec. Admin.*, 234 F. Supp. 3d 951, 960 (D.

21   Ariz. 2017).

22         Finally, the VE's testimony that "[s]ome cashiers have a sitting option or a sit/stand

23   option[]" (AR. at 66), does not resolve the apparent issues at step four. In the decision, the

24   ALJ found that two of Plaintiff's prior jobs constituted past relevant work: cashier (DOT

25   code 211.462-010) and housekeeper (DOT code 323.687-014). (AR. at 21.) At the hearing,

_____

26   [4] Dr. Cox's April 2019 examination occurred before FNP Converse prescribed Plaintiff's
     walker in June 2019. (AR. at 416-23, 443.) Dr. Cox documented that although Plaintiff did
27   not use an assistive device and had not fallen, she complained of "poor balance when
     walking." (AR. at 416.) Dr. Cox noted that Plaintiff exhibited functional strength in her
28   lower extremities, but "mild to moderate decrease in dynamic standing balance[.]" (AR. at
     420.)

the VE testified an individual who required "a medically necessary assistive device for ambulation and standing" would be unable to do the housekeeper job, leaving only the cashiering job. (AR. at 66.)[5] Plaintiff testified the cashiering job she performed involved lifting weights of up to 50 pounds (AR. at 53), and the VE testified an individual limited to light exertion would be unable to perform the cashiering job as Plaintiff performed it. (AR. at 64.)[6] Consequently, and assuming Plaintiff needs a walker, the VE's testimony leaves only one avenue for finding Plaintiff not disabled at step four: that she can perform the cashiering occupation as it is generally performed, or as "ordinarily required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *2 (S.S.A. 1982).

Under the "generally performed" test, "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as *generally required by employers throughout the economy*, the claimant should be found to be 'not disabled.'" *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) (quoting SSR 82-61) (emphasis added). "[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles [("DOT")]." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (citations omitted). For an ALJ to accept VE testimony contrary to the DOT, "the record must contain 'persuasive evidence to support the deviation.'" *Id.* at 846 (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir.1995)).

Here, the VE testified, based on her knowledge and experience, that "[s]ome cashiers have a sitting option or a sit/stand option." (AR. at 66.) She did not testify that the

---

[5] The VE identified a third job, appointment clerk, as past relevant work, but this job is absent from the ALJ's written findings at step four. (AR. at 21-22.) In response to the walker hypothetical, the VE testified this job would still be available (AR. at 66), but since the ALJ did not conclude that job constituted past relevant work in the decision (AR. at 21-22), the Court does not address it. *See Orn*, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.")

[6] The VE testified Plaintiff could perform "the cashier, *as per the DOT*, and the housekeeper, as per the DOT and as performed, and the appointment clerk, per the DOT and as performed." (AR. at 64.) (emphasis added).

cashiering occupation *generally* accommodates a sit-stand option; she testified only that "some" cashiering jobs would. (AR. at 66.) The VE's meaning is unclear. Her testimony also does not resolve the question of whether someone limited to *ambulating* with an assistive device could perform the cashiering job as generally performed, although Plaintiff's counsel included that in her hypothetical. (AR. at 66.) Assuming the cashiering occupation generally would accommodate a sit-stand option, the DOT requirements of the job still potentially include carrying weights while ambulating. *See* 20 C.F.R. § 404.1567(b) (defining light work as involving "frequent lifting or carrying of objects"). Moreover, as Plaintiff argues, the VE's testimony does not reconcile Plaintiff's need for a walker with the postural requirements of her RFC, such as balancing, stooping, or crouching.[7] *See* SSR 96-9p, 1996 WL 374185, at *7 (noting that a one-handed assistive device may not erode the occupational base of unskilled, sedentary work due to minimal lifting requirements, but that "the occupational base for an individual who must use [an ambulatory] device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded."). At best, the VE's testimony that the Plaintiff could perform her past relevant work as generally performed is vague, and the Court cannot say the ALJ's error in omitting the walker is harmless. *See Pinto*, 249 F.3d at 847 ("'When . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the [vocational expert's] head, we are left with nothing to review.'") (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir.1996)). While the VE is qualified to testify to these issues, 20 C.F.R. § 404.1560(b)(2), the Court finds the VE's testimony here is vague and incomplete. *See Rawlings v. Astrue*, 318 F. App'x 593, 594-95 (9th Cir. 2009) (unpublished) (remanding when vocational expert testimony was too ambiguous to support the classification of the claimant's past relevant work)

　　Although it is Plaintiff's burden to establish the inability to perform her own past

---

[7] Balancing, for instance, requires "[m]aintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces . . . ." *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles*, U.S. Dep't of Labor, App. C-3 (1981).

relevant work, "the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto*, 249 F.3d at 844. Here, the ALJ's analysis—that no walker was prescribed and that Dr. Gordon "merely noted a slow and shuffling gait[]"—is not supported, and Plaintiff's need for a walker casts doubt on her ability to perform her past relevant work, despite the VE's testimony. Consequently, the ALJ's error is not harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (harmless errors are "inconsequential to the ultimate nondisability determination.") (quotations and citations omitted).

**5.    Remedy**

The Court finds that a remand for additional proceedings is the appropriate remedy. When a court finds harmful legal error, it "ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). This is "the proper course, except in rare circumstances[.]" *Treichler*, 775 F.3d at 1099 (quotations omitted). But the Court has discretion to remand for additional proceedings where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted). Nevertheless, remand for additional proceedings may still be appropriate where "even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Additional proceedings would serve a useful purpose here, namely, the opportunity to procure additional VE testimony clarifying whether the cashiering job, as generally performed, would accommodate Plaintiff's need for a walker for ambulation and standing. The current record testimony that "some" cashiering jobs would afford a sit-stand option does not adequately address the issue. The Court also finds there is serious doubt as to

Plaintiff's disability. The ALJ summarized in the record a number of clinical examinations and observations casting doubt where Plaintiff showed benign, or mostly benign examination findings (AR. at 486, 495, 500, 504, 555, 565, 752), and notes from her treating specialists indicating "things look[ed] good from a clinical perspective, from a radiographic perspective and neurologically[,]" (AR. at 863), and that her MRI was "pretty much normal[.]" (AR. at 866.) The clinical evidence casts doubt on whether Plaintiff is disabled, and additional proceedings would be useful here.[8]

**IT IS ORDERED** that the March 17, 2021 decision of the ALJ is reversed and remanded for additional proceedings.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and terminate this action.

Dated this 6th day of September, 2023.

_____
Honorable Diane J. Humetewa
United States District Judge

---

[8] Since a remand for additional proceedings is the appropriate remedy, the Court need not address the remaining issues Plaintiff briefed. Upon remand, Plaintiff will have further opportunity to develop the record regarding her need for an ambulatory device, the functional impact of her mononeuropathy, the vocational impact of Dr. Cox's standing and walking limitations, Plaintiff's daily activities, and other issues.